## BENZING v BOARD OF EDUCATION OF HAMILTON CITY SCHOOL DIST et

Ohio Appeals, 1st Dist, Butler Co

Decided Jan 6, 1932

Harry J. Koehler, Jr., and W. C. Shepherd, Hamilton, for plaintiff.

Millikin Shotts, John F. Neilan, and Huntington V. Parrish, Hamilton, for defendants.

CUSHING, J.

I. As to the first specification of illegality, it is pleaded and admitted that the F. K. Vaughn Building Company is a corporation

under the laws of Ohio, with its principal office in the city of Hamilton, Ohio. There is nothing to indicate that there is any other person or corporation interested with the said F. K. Vaughn Building Company, and we find no authority in law supporting the claim that the bidder must negative the proposition that no other person or corporation is so interested. It would be incumbent upon the plaintiff to show that there was another interest or others interested in the bid to defeat the legality thereof.

II. As to the second proposition that the bid was based on plans and specifications different from those alleged to have been adopted by the board of education, it is sufficient to say there is no evidence to support this allegation. The plans and specifications were adopted September, 1930, and the bid of the F. K. Vaughn Building Company was filed October 20, 1931, prior to any modification requirement of the building commissioner of the city of Hamilton, Ohio, or suggestion of the state public building department.

III and IV. We do not find any merit in specifications 3 and 4.

As to specification 4, it is the law that the construction of public school buildings must be in accordance with the building and sanitary code of the state of Ohio. This is a legal requirement and need not be especially stated in the specifications.

V. Under specification 5, many propositions contained in the specifications and plans are urged as being in violation of the requirements of the General Code of Ohio and the ordinances of the city of Hamilton for the construction of school houses.

It is claimed that the plans and specifications were not approved by the building commissioner of the city of Hamilton, as required by law. The evidence is that the building commissioner did stamp the plans and specifications as approved, and accompanied the same with a letter requiring modification as hereinabove quoted, which shows the conditional approval. While the law does not specify as to the time of approval required in relation to the letting of the contract, it would seem more in keeping with the situation if such approval was had before advertising for bids. The fact is that the bid was made and accepted by the board of education on a set of plans and specifications other than those approved by the building commissioner of the city of Hamilton. This is a serious defect and enters somewhat into the question of the right of the plaintiff to relief in equity.

It is claimed that the plans and specifications are not in conformity with the Ohio State Building Code, in that the building is a four-story building in height, and is such a school building as is limited by the Code to three stories in height. §12600-45 GC.

The evidence is that the school sought to be erected is a grade "A" school, where the main first floor line is less than 8 feet above the grade line at the entrance to or exit from any story above the basement; and that the specifications call for a basement. The exit from and entrance to the first floor of the building being less than 8 feet, the basement is not rated as the first story. This being true, the building is a three-story and not a four-story building, since the basement is not to be calculated as one story.

While there are some technical objections seriously affecting the legality of the proceeding—such as the failure in the plans to show the maximum number of pupils or persons to be accommodated in each room, the failure of the building contractor to attach to his proposal a statement setting forth whose product, and what products, the proposal is based on, the provision for moisture protection, and some other minor omissions in the plans and specifications which might be classed in the language of counsel for the school board as "trivial," and not sufficient to require an interference of a court of equity—there are some major propositions in connection therewith which justify the relief sought.

It is admitted that the height of the ceiling in classroom No. 3, on the second floor, is 9 inches below the requirements of the State Building Code. If the requirements of the State Building Code are mandatory, this is a direct violation.

It is testified by a consulting engineer of the state building department that this situation could be remedied by furring the walls on each side of the room, thereby narrowing the room to conform to the low ceiling. This is not in accordance with the plans and specifications submitted, on which the bids were received. The plans and specifications required the ceiling to be constructed a certain height, the bidder bid to construct in accordance therewith, in direct conflict with the mandatory provisions of the State Building Code. The bidders are all required to bid on the same plans and specifications. That a ceiling 9 inches higher than provided for in the plans and specifications would entail an additional expenditure cannot be denied. The other bidders would therefore not be given an opportunity to bid on the narrowing of the room to meet the specifications as to height required by the Code. This would result in the destruction of the benefit of competitive bidding.

The second important proposition which presents itself to us is the failure of the specifications to provide automatic fire doors and fireproof doors for the boiler room, and reinforced concrete slab over the heater room, of the thickness required by the Code. It is admitted the specifications do not call for these provisions required by the Building Code of the state of Ohio. This goes to the question of fireproofing the building and the protection of the youth attending the school. An observation by Chief Justice Marshall, in the case of **State ex Myers v Industrial Commission, 105 Oh St, 103, at page 111, 136 NE 896, 898**, is apropos wherein he states: "It is a matter of common knowledge that in many, if not in all, instances, comprehensive statutes for the protection and conservation of human life are called forth by some great disaster or series of disasters. We are not concerned with the causes which moved the General Assembly to enact the Building Code, neither are we concerned with the wisdom of its provisions; nor whether those provisions are unduly severe. * * *"

The mandatory character of the Building Code is passed upon in the above case, and is pronounced in the third paragraph of the syllabus, as follows: "3. There is no ambiguous or indefinite language in §§12600-1, 12600-3, 12600-5 and 12600-77, GC, being parts of the Ohio Building Code, 102 Ohio Laws, p. 586 et seq., and the provisions of those sections are mandatory, and, being parts of the 'special requirements' of the Ohio Building Code, the Department of Industrial Relations of the state of Ohio does not, by virtue of the general provisions of §12600-277, GC, have authority to substitute other performance in place of the special requirements of those sections."

While there have been some amendments to the Building Code since the pronouncement in the Myers Case, nothing has been enacted to change the rule as to the mandatory provisions of the code.

Had the school building under consideration been in the process of construction after the entering into of the contract, the complaints might have been remedied by certain requirements by the court to comply with the Building Code before occupancy. However, the action having been brought prior to letting the contract, thus placing the parties in a position where no injury can result, other than a short delay, we are of opinion that the board of education should be required to proceed in accordance with law and the requirements of the Code, rather than permit the construction of a building which would result in virtually the erection of a nuisance under the statute, requiring changes to be made after its erection at an additional cost and expense.

In the Myers case, above referred to, the building had been completed, but it did not comply with the provisions of the Code. The court of equity in proceeding to do equity did not require a destruction of the building, but permitted the changing of certain conditions by the use of equivalents of the Code requirements.

To approve what the board of education and the bidder here seek to do would in effect be a court modifying the plans and specifications, the form of the bidding, and supervising the construction of the building to see that the same complied with the laws of the state of Ohio. This, of course, the court cannot do.

For the reasons stated, a perpetual injunction will be granted, as prayed for in the amended petition.

Injunction allowed.

ROSS, PJ, and HAMILTON, J, concur.